IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANEION S. JENNINGS, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:18CV793–HEH
)
KAREN STAPLETON, *et al.* )
)
    Defendants. )

## MEMORANDUM OPINION
### (Granting Defendants' Motion to Dismiss)

Daneion S. Jennings, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. (Compl., ECF No. 1).[1] Jennings names as Defendants: Karen Stapleton, Offender Discipline Manager, and Mr. Haden, Institutional Hearings Officer ("IHO") at Indian Creek Correctional Center (collectively "Defendants"). (*Id.* at 1–2.) Defendants filed a Motion to Dismiss, asserting, *inter alia*, that Jennings's claims should be dismissed for failure to state a claim upon which relief may be granted.[2] (ECF No. 14.) Despite the provision of notice pursuant to *Roseboro v.*

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Jennings's submissions.

[2] In his Complaint, Jennings presents claims regarding prison disciplinary convictions that he received in 2016 and 2017. (*See generally* Compl. 5–9.) In addition to arguing that Jennings's claims fail to state a claim upon which relief may be granted, Defendants argue, *inter alia*, that Jennings's claims regarding his 2016 disciplinary convictions are time-barred and his claims regarding his 2017 disciplinary convictions are moot because the 2017 disciplinary convictions were overturned. (Mem. Supp. Mot. Dismiss 4–7, ECF No. 15.) With respect to Jennings's 2016 disciplinary convictions, Defendants argue that "Jennings would have been aware of the facts giving rise to [these] claims no later than September 30, 2016," and "Jennings did not file

*Garrison*, 528 F.2d 309 (4th Cir. 1975), Jennings did not respond to Defendants' Motion to Dismiss. For the reasons stated below, the Motion to Dismiss (ECF No. 14) will be granted.

## I. STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or

---

the instant action . . . until November 2, 2018 at the earliest." (*Id.* at 6–7 (footnote omitted).) Defendants therefore argue that Jennings's claims regarding his 2016 disciplinary convictions are untimely because he was required to file this action "within two years after the cause of action accrue[d]." (*Id.* at 5–6.) Defendants are correct that, for this action to be timely, Jennings must have filed this action within two years of the accrual of his claims. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). However, in determining when a cause of action accrues, "even though the limitation period is borrowed from state law, the question of when a cause of action *accrues* under 42 U.S.C. § 1983 remains one of federal law." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (emphasis in original) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Furthermore, in addition to the requirement that § 1983 actions in Virginia be filed within two years of the accrual of the plaintiff's claims, inmate-plaintiffs typically must satisfy the Prison Litigation Reform Act's ("PLRA") exhaustion requirement. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Recently, the United States Court of Appeals for the Fourth Circuit held that "federal equitable tolling principles" must be applied "to equitably toll § 1983 limitations during the PLRA exhaustion period." *Battle v. Ledford*, 912 F.3d 708, 718–19 (4th Cir. 2019) (citations omitted). Defendants fail to address whether Jennings pursued any administrative remedies and whether his pursuant of administrative remedies would equitably toll the limitation period. As such, the Court will address the merits of Jennings's claims regarding his 2016 disciplinary convictions.

Additionally, Defendants argue that Jennings's claims regarding his 2017 disciplinary convictions are moot because the 2017 disciplinary convictions were overturned. (Mem. Supp. Mot. Dismiss 4–5.) With respect to mootness, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted). Further, "[i]f intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[ is] powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983). Here, Jennings's 2017 disciplinary offenses were "overturned and the attendant penalties were annulled." (ECF No. 15-1, at 2.) However, although not well-articulated in Jennings's Complaint, insofar as Jennings claims that the imposition of the disciplinary sanctions prior to the 2017 disciplinary offenses being overturned violated his due process rights, Defendants fail to address whether such claims are also moot. Therefore, the Court also will address the merits of Jennings's claims regarding his 2017 disciplinary convictions.

2

(2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *aff'd*, 36 F.3d 1091 (4th Cir. 1994). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints

3

containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. JENNINGS'S ALLEGATIONS

### A. Jennings's Disciplinary Charges

In Jennings's Complaint, he alleges that his "due process rights have been violated by the [IHO] at Indian Creek Correctional Center, Mr. Haden, [when Mr. Haden] den[ied] [Jennings] of [his] right to appeal [the following] disciplinary offenses: ICCC–

4

2016–0661, ICCC–2016–0755, ICCC–2017–0987, and ICCC–2017–1181." (Compl. 5.)

With respect to the four challenged disciplinary offenses, Jennings contends that:[3]

> I filed an informal complaint about the ICC–2016–0661 and ICC–2016–0755 offenses, [and] instead of accepting responsibility for his mistake, IHO Mr. Haden lied to me in his response to tell me my "cases [are] not appealable" because I "accepted the Penalty Offer." [Virginia Department of Corrections ("VDOC")] Operati[ng] Procedure [("O.P.")] 861.1 "Offender Discipline" section . . . disproves Haden's claim that the offenses were "not appealable" due to my acceptance of the Penalty Offer. Haden was in a conflict of interest because to admit the truth he would have to admit that he made an error that would result in the overturning of these offense[s] which would grant me a substantial amount of good time back.

(*Id.*)

Further, Jennings alleges that "[o]n October 30th, 2017, [he] sent a letter to the Director of [V]DOC, Harold Clark[e]," and "[t]he letter was forwarded to Discipline Manager Karen Stapleton." (*Id.* at 6.) In his letter, Jennings contends that he raised, *inter alia*, the following concerns: "issues with the offenses, the policies governing what is required to be done by [V]DOC employees, their denial of [his] appeal [and] due process, [and] when the time period for [his] appeal shall begin." (*Id.*)

Jennings alleges that in Defendant Stapleton's January 26, 2018 response to his letter "she [made] 3 deliberate lies" regarding the applicable VDOC polices and procedures. (*Id.*) First, Jennings contends that Defendant Stapleton claimed that "[t]he timeframes to appeal [his disciplinary charges] had expired;" however, "since [he] never received [his] completed copies [his] time period for appeal has never started, let alone 'expired' as claimed by Stapleton." (*Id.*) Jennings next contends that Defendant

---

[3] The Court omits the secondary citations set forth in Jennings's Complaint.

5

Stapleton claimed that "when an offender enters into a Penalty Offer, any appeal of the offense is limited to a determination of whether there was acceptance of a Penalty Offer and whether there was any serious procedural error *prior* to the acceptance of this Penalty Offer." (*Id.* (emphasis in original) (internal quotation marks omitted).) However, Jennings contends that pursuant to VDOC O.P. 861.1,

> If an offender has accepted a Penalty Offer, . . . , but later appeals the Disciplinary Offense Report, only the following issue may be considered:
> 1. If there was an acceptance of a Penalty Offer, if applicable
> 2. If there was an admission of guilt
> 3. If there is a serious procedural error or error in the imposition of the penalty.

(*Id.* at 7 (internal quotation marks omitted).) Jennings alleges that Defendant "Stapleton intentionally falsified the policy in her response to [him] to intentionally make [him] think [he] was wrong and nothing could be done." (*Id.*) Finally, Jennings contends that "[h]er last intentional lie was telling [him] that she '[saw] no reason to go back and overturn these charges now[;]' [h]owever, in her affidavit submitted to the Va. Supreme Court for [Jennings's state habeas action], she states that as [he] was never provided [his] completed Disciplinary Offense Reports, she was overturning offenses ICCC–2017–0987 and ICCC–2017–1181." (*Id.*)

### B. Jennings's State Habeas Petition

With respect to the above-referenced state habeas petition, prior to initiating the present action, Jennings filed a petition for a writ of habeas corpus in the Supreme Court

6

of Virginia challenging the legality of the same four disciplinary convictions that are at issue here. (*See* ECF No. 15–1, at 1.)[4]

The Supreme Court of Virginia dismissed Jennings's state habeas petition, concluding that "[his] claims [were] time-barred to the extent they challenge petitioner's 2016 infractions," and that his claims regarding his 2017 infractions "[were] not cognizable in habeas corpus." (*Id.* at 2 (citation omitted).) Specifically, with respect to Jennings's 2017 infractions, the Supreme Court of Virginia explained that "his August 2017 infraction was a $6 fine, that infraction has been dismissed, and the fine has been reimbursed," and "[s]imilarly, petitioner's October 2017 infraction has been overturned and the attendant penalties annulled." (*Id.*) Therefore, the Supreme Court of Virginia concluded that Jennings's claims regarding his 2017 infractions were not cognizable in habeas corpus because he did "not contend that either his August or October 2017 infraction ha[d] a continuing effect on the duration of his confinement." (*Id.*)

C.     **Resulting Harm to Jennings & Jennings's Claims Against Defendants**

As a result of the institutional convictions, Jennings contends that Defendants "violated [his] right to not be subject to cruel and unusual punishment." (Compl. 8). Jennings alleges that "[he] was fined $10 for offense case number ICCC–2016–0661 and given 30 days disciplinary segregation along with loss of 180 days of good time for

---

[4] The Court notes that, in this action, both Jennings and Defendants submitted various records and filings from Jennings's state habeas proceeding. Jennings's prior state habeas proceeding is a matter of public record of which this Court may properly take judicial notice, *see Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), "without having to convert the Rule 12(b)(6) motion to one for summary judgment under Rule 56(b)." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

7

offense case number ICCC-2016-0755." (*Id.*) Additionally, Jennings alleges that "as a result of [Defendant Haden's] actions, [he] will be wrongfully imprisoned after December 14th, 2018," which was "[his] original release date." (*Id.* at 5.)

Jennings also claims that

> because [he is] "time-barred" on the state habeas corpus petition, [Defendant] Stapleton is still allowing the denial of [his] appeal, violation of [his] due process rights, and serious procedural error or error in the imposition of the penalty to stand for offenses ICCC-2016-0661 and ICCC-2016-0755 which will result in [his] wrongful imprisonment.

(*Id.* at 7.) Jennings contends that "this is a 'continuing wrong' as in [Defendant Stapleton] is aware of the situation, continues to deny [him] of [his] appeal and continues to violate [his] due process rights." (*Id.*)

Further, Jennings alleges that "as a result of offense case ICCC-2016-0755, [he has] not been allowed to be at [his] re-entry site location" because "the mentioned offense caused [his] right for [his] re-entry site location to be waived." (*Id.* at 8.) Jennings contends that, as part of "re-entry planning," offenders are typically "placed within 50 miles of their home plan location." (*Id.*) In contrast, Jennings alleges that "[s]ince being charged with this offense, [he has] been kept hundreds of miles from [his] home plan location." (*Id.*)

Jennings asserts that had he "been provided [his] due process rights, [he] would have been able to appeal [his] offenses, had them overturned due to the procedural errors, and [he] could have been eligible for [his] re-entry site location where [his] family could visit [him] regularly again." (*Id.* at 8-9.) Additionally, Jennings alleges that "[he] also would not be subject to harm" because he is "a Security Level I offender, but [the

8

VDOC] is overriding [him] to a security level 3 for the mentioned offenses, even after 2 of them have been overturned." (*Id.* at 9.) Jennings contends that "[t]he override and keeping [him] at a higher level, more restrictive facility could also be retaliation for [his] filing of litigation against [the VDOC]."[5] (*Id.*)

Furthermore, Jennings, alleges that "[w]hich ever way it is looked at, the cruel and unusual punishment that has resulted [from] the offenses of which [he was] denied [his] right to due process . . . is a 'continuing wrong' as [he is] continuing to be housed in a higher security level facility way outside of [his] re-entry location." (*Id.* at 9; *see id.* at 8.) Additionally, Jennings alleges that "[he] was not afforded the same due process rights as other offenders as [he] was denied the right to appeal these offenses," and "[he was] not allowed the same re-entry planning as other offenders."[6] (*Id.* at 8.)

---

[5] As set forth herein, Jennings's vaguely references "retaliation" and alleges in a conclusory manner that "keeping [him] at a higher level, more restrictive facility could also be retaliation for [his] filing of litigation against [the VDOC]." (Compl. 9.) However, besides this conclusory allegation, Jennings fails to provide any supporting facts or further explanation regarding any alleged retaliation against him. Such a vague and conclusory claim of retaliation fails to state a claim upon which relief may be granted. For example, to state a claim for retaliation, Jennings must allege sufficient facts to plausibly suggest, *inter alia*, that Defendants' actions "adversely affected [his] First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted). Jennings fails to provide any facts about how Defendants took any actions against him that "adversely affected [his] First Amendment rights." *Id.* Therefore, for these reasons, any such vague and conclusory retaliation claim is insufficient to state a claim upon which relief may be granted and is subject to dismissal without prejudice.

[6] Here, Jennings vaguely references that he was not allowed the same rights as other offenders. (Compl. 9.) To the extent that Jennings intended this vague and conclusory allegation to suggest that his rights under the Equal Protection Clause were violated, such a vague and conclusory claim fails to state a claim upon which relief may be granted. Specifically, the Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Jennings must allege facts that indicate: "that he has been treated differently from others with whom he is similarly situated and

9

Based on the foregoing allegations, the Court construes Jennings to raise the following claims for relief:

> Claim One: Defendants violated Jennings's Fourteenth Amendment[7] right to due process when he was not provided with an appeal package for his institutional convictions and when Defendants misled him about his right to appeal the institutional convictions, which resulted in his (a) placement in segregation, (b) loss of good time credits, (c) inability to be housed at his re-entry site facility, and (d) placement at a higher security institution. (*Id.* at 5–9.)
>
> Claim Two: Defendants violated Jennings's Eighth Amendment[8] rights by placing him in segregation, revoking his good time credits, denying him the ability to be housed at his re-entry site location, and housing him at a higher security institution. (*Id.* at 8–9.)

Plaintiff seeks monetary damages and injunctive relief. (*Id.* at 10.)

### III. DUE PROCESS CLAUSE

In Claim One (a), (b), (c), and (d), Jennings contends that Defendants violated his right to due process. (Compl. 5–9.) The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a

---

that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Jennings has not done so. Accordingly, any such vague and conclusory equal protection claim is insufficient to state a claim upon which relief may be granted and is subject to dismissal without prejudice.

[7] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[8] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

The Supreme Court has held that "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s[] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

To establish a state-created liberty interest, Jennings "must make a threshold showing that the deprivation imposed amounts to an 'atypical and significant hardship' or that it 'inevitably affect[s] the duration of his sentence.'" *Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). If Jennings makes this threshold showing, he must then identify the state regulatory or statutory language that creates a protected liberty interest in remaining free from such confinement. *See id.*

Here, Jennings contends that Defendants violated his due process rights when he was not provided with an appeal package for his institutional convictions and when Defendants misled him about his right to appeal the institutional convictions, which he

contends resulted in the imposition of the sanctions that are set forth in Claim One (a), (b), (c), and (d). However, Jennings "[does] not enjoy a procedural due process right to an appeal." *Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–71 (1974); *Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 2007)); *see Moses v. Blocher*, No. 5:07–CT–3070–D, 2009 WL 5931221, at *5 (W.D.N.C. Jan. 16, 2009) (explaining that "*Wolff* . . . does not mandate that prison officials provide inmates with an appeal of a disciplinary decision," and concluding that "[b]ecause plaintiff does not have a constitutional right to appeal his disciplinary conviction, he has failed to state a claim upon which relief may be granted" citation omitted)), *aff'd*, 326 F. App'x 227 (4th Cir. 2009); *cf. Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (explaining that "a false disciplinary charge cannot serve as the basis for a constitutional claim," and affirming the dismissal of a plaintiff's "claim that he was improperly charged with a disciplinary conviction and false promises were made regarding its disposition" (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986))). Furthermore, as explained below, Jennings fails to allege sufficient facts to plausibly suggest that the imposition of the sanctions set forth in Claim One (a), (b), (c), and (d) violated his due process rights.

In Claim One (a), Jennings contends that his inability to appeal his institutional convictions resulted in his placement in segregation. (Compl. 8.) Although Jennings's allegations regarding his placement in segregation and the duration of his confinement in segregation lack precision, it appears that Jennings was "given 30 days disciplinary segregation" for one of his 2016 disciplinary convictions (*id.*), and "30 days in

12

disciplinary segregation" for one of his 2017 disciplinary convictions. (ECF No. 1–5 ¶ 8.) As an initial matter, the Constitution itself does not give rise to a liberty interest in avoiding segregation. *See Gaston*, 946 F.2d at 343. Furthermore, with respect to the existence of a state-created liberty interest, Jennings has provided no facts about life in the general prison population nor has he provided any facts about the conditions of his confinement in segregation. Therefore, Jennings has failed to allege any facts to suggest that the conditions in segregation were significantly harsher than the conditions in the general prison population. *Cf. Beverati*, 120 F.3d at 504 (concluding that more burdensome conditions in segregation were not sufficiently atypical). Accordingly, Jennings has failed to allege any facts to plausibly suggest that his placement in segregation for two separate thirty-day periods amounted to an "atypical and significant hardship" such that a State might conceivably intend to create a liberty interest in avoiding the conditions. *Puranda*, 2009 WL 3175629, at *4 (quoting *Sandin*, 515 U.S. at 484, 487). *But see Incumaa v. Stirling*, 791 F.3d 517, 531–32 (4th Cir. 2015) (finding that inmate's placement in solitary confinement for twenty years involved "severely restrictive" conditions and constituted an atypical and significant hardship).

With respect to Claim One (b), in which Jennings contends that his inability to appeal his institutional convictions resulted in the loss of good time credits, (Compl. 5–6), to the extent that Jennings alleges that prison officials revoked vested good time credits, his claim does implicate a protected liberty interest. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 653 n.9 (4th Cir. 2007) (citing *Wolff*, 418 U.S. at 560–61).

13

Nevertheless, the Constitution only guarantees the following minimal process prior to revoking such credits:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor*, 2008 WL 8289490, at *2 (citing *Wolff*, 418 U.S. at 563–71). Jennings does not allege that he was deprived of any of these procedural protections. Instead, Jennings claims that he was denied his right to appeal, and as noted above, Jennings "[does] not enjoy a procedural due process right to an appeal." *Id.* (citing *Wolff*, 418 U.S. at 563–71; *Johnson*, 487 F. Supp. 2d at 386).

In Claims One (c) and (d), Jennings contends that his inability to appeal his institutional convictions prevented him from being housed at his re-entry site facility (Claim One (c)) and resulted in his placement at a higher security institution (Claim One (d)). (Compl. 8–9). However, "[t]he federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.'" *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (alterations in original) (quoting *Hewitt*, 459 U.S. at 468). Additionally, the Constitution does not "guarantee that the convicted prisoner will be placed in any particular prison," *Meachum v. Fano*, 427 U.S. 215, 224 (1976)), and "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221 (citing *Meachum v*, 427

14

U.S. at 225). Furthermore, to the extent that Jennings seeks to challenge his inability to participate in any rehabilitative programs at his re-entry site facility, Jennings has no due process right to participate in rehabilitative programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *see also Hall v. Russell*, No. 7:18CV00326, 2018 WL 6191130, at *2 (W.D. Va. Nov. 28, 2018) (citations omitted) (discussing that a Virginia state inmate had no constitutional right to participate in a rehabilitative program).

Thus, as explained above, with respect to Jennings's due process claims, which are set forth in Claim One (a), (b), (c), and (d), Jennings does not "[does] not enjoy a procedural due process right to an appeal," *Coor*, 2008 WL 8289490, at *2 (citing *Wolff*, 418 U.S. at 563–71; *Johnson*, 487 F. Supp. 2d at 386), and Jennings fails to show that that the imposition of the above-discussed sanctions violated his due process rights. Accordingly, for the reasons set forth above, the Motion to Dismiss will be granted with respect to Claim One (a), (b), (c), and (d). Claim One (a) will be dismissed without prejudice. Claim One (b), (c), and (d) will be dismissed with prejudice.

## IV. EIGHTH AMENDMENT

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for

15

their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of

16

that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In Claim Two, Jennings contends that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in segregation, revoking his good time credits, denying him the ability to be housed at his re-entry site location, and housing him at a higher security institution. (Compl. 8–9.) Jennings further contends that, as a result of his inability to be housed at his re-entry site location, he was unable to see his family as often as he had previously seen them. (*Id.* at 8.)

However, Jennings's complaints about the conditions of his confinement amount to no more than "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." *Strickler*, 989 F.2d at 1380 n.3 (quoting *Hudson*, 503 U.S. at 9). As to the objective component, Jennings fails to allege that he sustained any injury, much less a "serious or significant emotional injury as a result of these conditions." *Id.* at 1381. For this reason alone, his claim should be dismissed. *See DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 325–26 (E.D. Va. 2000) (finding that a loss of recreation, telephone, canteen, and visitation privileges upon placement in segregation does not violate the Eighth Amendment). Moreover, Jennings fails to allege any facts that plausibly suggest that Defendants knew of and disregarded a substantial risk of serious harm to Jennings from the conditions of which he complains.

Furthermore, with respect to Jennings's placement at a higher security level institution, Jennings alleges neither a serious or significant emotional injury nor deliberate indifference by Defendants. Additionally, "[Jennings] has not alleged anything to suggest that his living conditions violate contemporary standards of decency." *Canada v. Ray*, No. 7:08cv00219, 2010 WL 2179062, at *3 (W.D. Va. May 28, 2010) (rejecting plaintiff's claim that being housed at Red Onion State Prison for nine years violated his Eighth Amendment rights).

Therefore, Claim Two will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## V. MOTION FOR APPOINTMENT OF COUNSEL

Jennings filed a Motion for Appointment of Counsel. (ECF No. 12.) Counsel need not be appointed in § 1983 cases unless the case presents complex issues or exceptional circumstances. *See Fowler v. Lee*, 18 F. App'x 164, 166 (4th Cir. 2001) (citation omitted). This action presents no complex issues or exceptional circumstances. Additionally, Jennings's pleadings demonstrate that he is competent to represent himself in the action. Accordingly, Jennings's Motion for Appointment of Counsel (ECF No. 12) will be denied without prejudice.

## VI. CONCLUSION

The Motion to Dismiss (ECF No. 14) will be granted. Claims One (a) and Two will be dismissed without prejudice. Claim One (b), (c), and (d) will be dismissed with

prejudice. Jennings's Motion for Appointment of Counsel (ECF No. 12) will be denied without prejudice. The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: February 27, 2020
Richmond, Virginia

19